UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

RANCE MOISES ESCOLASTICO-PENA,

               Defendant.

------------------------------------X

11 Cr. 81-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

      On June 8, 2011, Rance Moises Escolastico-Pena ("Escolastico-Pena" or "Defendant") pleaded guilty to one count of illegal re-entry after having been convicted of an aggravated felony, in violation of 18 U.S.C. § 1326(a) and (b)(2). For the reasons set forth below, Escolastico-Pena will be sentenced to 21 months' imprisonment to be followed by 3 years' supervised release. Escolastico-Pena will also be required to pay a special assessment of $100.

**Prior Proceedings**

      On January 26, 2011, Indictment 11 CR 81 (RWS) was filed in the Southern District of New York. It charges that

1

from at least January 5, 2011, in the Southern District of New York and elsewhere, Escolastico-Pena, "being an alien, did enter and was found in the United States after having been removed from the United States subsequent to a conviction for Criminal Sale of a Controlled Substance in the Third Degree, an aggravated felony, on June 24, 1999, in New York Supreme Court, New York County, without having obtained the express consent of the Attorney General of the United States or his successor, the Secretary for the Department of Homeland Security, to reapply for admission," in violation of 18 U.S.C. § 1326(a) and (b)(2).

On June 8, 2011, Escolastico-Pena appeared before the Honorable James L. Cott in the Southern District of New York and allocuted to his criminal conduct as charged.

Escolastico-Pena's sentencing is currently scheduled for September 29, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d

2

Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines.   Thus, the sentence to be imposed here is the result of a consideration of:

   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2)   the need for the sentence imposed —

        (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)   to afford adequate deterrence to criminal conduct;

        (C)   to protect the public from further crimes of the defendant; and

        (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3)   the kinds of sentences available;

   (4)   the kinds of sentence and the sentencing range established for —

        (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

   (5)   any pertinent policy statement . . . [issued by the Sentencing Commission];

   (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

>     (7)  the need to provide restitution to any victims of
>          the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not.  See Crosby, 397 F.3d at 114-15.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2008) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a non-Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Escolastico-Pena's personal and family history.

4

## The Offense Conduct

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

Escolastico-Pena is a citizen of the Dominican Republic and has never been a citizen of the United States.

On June 24, 1999, Escolastico-Pena was convicted of an aggravated felony in New York County Supreme Court, of Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law Section 220.39, and sentenced to 18 to 54 months' imprisonment.

Subsequent to his conviction, Escolastico-Pena was removed from the United States on May 20, 2000.

On January 5, 2011, Escolastico-Pena was arrested and charged with Criminal Possession of a Controlled Substance in the Seventh Degree.

According to the case agent, Escolastico-Pena's fingerprints were cross-referenced in a fingerprint inquiry database, and revealed that he was a citizen of the Dominican Republic and was a previously deported alien, who was removed from the United States subsequent to an aggravated felony conviction.

A search of records maintained by ICE, including the alien number assigned to Escolastico-Pena, revealed that there was no indication that at anytime after May 20, 2000, any person by the name of Escolastico-Pena received permission from the Attorney General or the Secretary for the Department of Homeland Security, to reapply for admission to the United States following his deportation.

**The Relevant Statutory Provisions**

Pursuant to 18 U.S.C. § 1326(a) and (b)(2), the maximum term of imprisonment is twenty years.

If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

6

Because the applicable Guideline range is in Zone D of the Sentencing Table, Defendant is not eligible for probation, pursuant to § 5B1.1, Application Note #2.

The maximum fine that may be imposed is $250,000, pursuant to 18 U.S.C. § 3571.  A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

## The Guidelines

The November 1, 2010 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).  The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The Guideline for a violation of 18 U.S.C. § 1326(a) is found in § 2L1.2(a), which provides for a base offense level of eight.

Pursuant to § 2L1.2(b)(1)(A)(i), an increase of 16

7

levels is warranted because Defendant was previously deported subsequent to a conviction for a drug trafficking offense for which the sentence imposed exceeded 13 months.

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty for an offense with a base level of 16 or greater, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 21.

On September 29, 1998, Escolastico-Pena, using the alias "Jimmy Antigua," was arrested and charged with Criminal Sale of a Controlled Substance in the Third Degree. On June 24, 1999, Escolastico-Pena was sentenced in New York County Supreme Court to a term of 18 to 54 months' imprisonment. Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants three criminal history points.

8

On January 5, 2011, Escolastico-Pena, using the alias "Raymond Arcena," was arrested after being found in possession of cocaine. On January 6, 2011, Escolastico-Pena's received a sentence of a six month license suspension. Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

The criminal convictions above result in a subtotal criminal history score of four, which according to the table at Chapter 5, Part A of the Guidelines, establishes a Criminal History Category of III.

Based on a total offense level of 21 and a Criminal History Category of III, the Guidelines range for imprisonment is 46 to 57 months.

The Guidelines range for a term of supervised release is two to three years, pursuant to § 5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by

statute, pursuant to § 5D1.1(a).

Because the applicable guideline range is in Zone D of the Sentencing Table, Defendant is not eligible for probation, pursuant to § 5B1.1, Application Note #2.

The fine range for the instant offense is from $7,500 to $75,000, pursuant to § 5E1.2(c)(3). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,357.01 to be used for imprisonment, a monthly cost of $328.20 for supervision, and a monthly cost of $2,153.22 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's

decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.  Upon consideration of all of the relevant factors, it is concluded that the imposition of a non-Guidelines sentence is warranted.


**The Fast Track Disparity**


Fast-track jurisdictions allow illegal-reentry defendants a reduced sentence in exchange for a quick guilty plea.  See United States v. Lopez, 424 Fed. Appx. 51, 52 (2d Cir. 2011); United States v. Hendry, 522 F.3d 239, 240 n.1 (2d Cir. 2008).  The Second Circuit has held that district courts are not required to grant variances based on the sentencing disparity between fast-track and non-fast-track jurisdictions. United States v. Mejia, 461 F.3d 158, 164 (2d Cir. 2006); Hendry, 522 F.3d at 242.  However, the Second Circuit has acknowledged that it has "yet to address whether a district court in a non-fast-track jurisdiction may impose a below-Guidelines sentence based on a comparison with fast-track sentences[.]" Lopez, 424 Fed. Appx. at 52.


In the aftermath of the United States Supreme Court's decision in Kimbrough, the Circuit Courts of Appeals have split

11

concerning the issue of whether a district court may impose a below-Guidelines sentence based on the disparity between fast-track and non-fast-track jurisdictions.   The Fifth, Ninth, and Eleventh Circuits concluded that Kimbrough had no effect on fast-track sentencing and that sentencing courts are precluded from considering disparities created by fast-track programs. See United States v. Gomez-Herrera, 523 F.3d 554, 562-63 (5th Cir. 2008); United States v. Gonzalez-Zotelo, 556 F.3d 736, 739-41 (9th Cir. 2009); United States v. Vega-Castillo, 540 F.3d 1235, 1239 (11th Cir. 2008).   The First, Third, Sixth, and Seventh Circuits, however, have reached a different conclusion, holding that, after Kimbrough, fast-track disparity can be considered in the district court's analysis of whether a below-Guidelines sentence is warranted.   United States v. Rodriguez, 527 F.3d 221, 229 (1st Cir. 2008); United States v. Arrelucea-Zamudio, 581 F.3d 142, 150-151 (3d Cir. 2009); United States v. Camacho-Arellano, 614 F.3d 244 (6th Cir. 2010); United States v. Reyes-Hernandez, 624 F.3d 405, 421 (7th Cir. 2010).

Section 3553(a)(6) instructs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).   This Court previously has

12

imposed non-Guidelines sentences in recognition of the fast-track disparity. See, e.g., United States v. Ramirez, 09-CR-751 (RWS), 2009 WL 4722237 (S.D.N.Y. Dec. 4, 2009); United States v. Evangelista, 08-CR-172 (RWS), 2008 WL 5057862 (S.D.N.Y. Dec. 1, 2008), United States v. Santos-Nuez, 05-CR-1232(RWS), 2006 WL 1409106 (S.D.N.Y. May 22, 2006); United States v. Austin, No. 05-CR-744(RWS), 2006 WL 305462 (S.D.N.Y. Feb. 6, 2006); United States v. Santos, 406 F. Supp. 2d 320 (S.D.N.Y. 2005); see also United States v. Seval, 293 Fed. Appx. 834 (2d Cir. 2008) (remanding for resentencing in light of district court's erroneous view that it did not have discretion to depart from Guidelines based on fast-track disparity).

As this Court has explained in the past, while fast-track programs may create an efficient solution to an explosion of illegal reentry cases in border districts, they nevertheless result in the type of sentencing disparity cautioned against in section 3553(a)(6). As the court in United States v. Galvez-Barrios explained: "Because they operate only in certain districts (typically in southwestern states), an illegal alien stopped in California or Arizona will receive a lighter sentence than an alien convicted of the same offense and with the same record who is found in Wisconsin." 355 F. Supp. 2d 958, 963

13

(E.D. Wis. 2005).  As the Honorable Lewis A. Kaplan noted, "it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested."  United States v. Bonnet-Grullon, 53 F. Supp. 2d 430, 435 (S.D.N.Y. 1999).  Because the disparity created is of the type envisioned by section 3553(a)(6), under Crosby it is appropriate for the Court to exercise discretion to minimize the sentencing disparity that fast-track programs create.

Section 3553(a)(5) instructs courts to consider policy statements issued by the Sentencing Commission in determining whether a non-Guidelines sentence should be imposed.  The Sentencing Commission itself has expressed serious concern about the unwarranted disparities that result from fast-track programs. As the Commission explained:

> The statutory requirement that the Attorney General approve all early disposition programs hopefully will bring about greater uniformity and transparency among those districts that implement authorized programs. Defendants sentenced in districts without authorized early disposition programs, however, can be expected to receive longer sentences than similarly-situated defendants in districts with such programs. This type of geographical disparity appears to be at odds with the overall Sentencing Reform Act goal of reducing unwarranted disparity among similarly-situated

14

offenders.

U.S. Sentencing Comm'n, Report to Congress: Downward Departures from the Federal Sentencing Guidelines 66-67 (2003).  This acknowledgment by the Sentencing Commission that the existence of fast-track programs creates unwarranted disparities in sentencing militates in favor of imposing a non-Guidelines sentence.

## Double-Counting of Criminal History

Escolastico-Pena's advisory Guideline range of 46 to 57 months' incarceration is also unreasonable because it double counts his criminal history, using his prior convictions not only to enhance his criminal history category but also to increase his offense level threefold.  As one court considering this issue has noted, "Although it is sound policy to increase a defendant's sentence based on his prior record, it is questionable whether a sentence should be increased twice on that basis."  Galvez-Barrios, 355 F. Supp. 2d at 958.  This Court previously has imposed non-Guidelines sentences to discount the unreasonably harsh effects of double-counting in illegal re-entry cases.  See Evangelista, 2008 WL 5057862, at *6; Austin, 2006 WL 305462 at *8-*9; Santos, 406 F. Supp. 2d at

327-28.  Courts outside this jurisdiction have also recognized double-counting as a factor warranting a below-Guidelines sentence.  See, e.g., United States v. Garcia-Jaquez, No. 11-cr-00153-WJM, 2011 WL 3904089, at *10 (D. Colo. Sept. 7, 2011); United States v. Lugo-Nunez, No. 11-CR-3, 2011 WL 2414566, at *6 n.1 (E.D. Wis. June 10, 2011); United States v. Pahua-Martinez, No. 8:08CR415, 2009 WL 2003241, at *6 (D. Neb. July 2, 2009); Galvez-Barrios, 355 F. Supp. 2d at 961.

In this case, double-counting is inappropriate. Nowhere but in the Guidelines governing illegal reentry is a defendant's offense level increased threefold based solely on a prior conviction.  Here, the Defendant's conviction for Criminal Sale of a Controlled Substance in the Third Degree results in an increase of 16 offense levels.  This same conviction also accounts for Escolastico-Pena having a Criminal History Category of III.  The result of this double-counting produces a Guidelines range that is unreasonable, given the non-violent nature of the instant offense.

**The Sentence**

Based upon estimates that the average "fast track"

16

sentence is reduced by four levels, see Santos, 406 F. Supp. 2d at 329, Escolastico-Pena's offense level will be reduced accordingly.  This Court previously has utilized the equivalent of a four-level reduction in the offense level in determining the length of non-Guidelines sentences.  Ramirez, 2009 WL 4722237, at *6; Evangelista, 2008 WL 5057862, at *7; Santos-Nuez, 2006 WL 1409106, at *6; Santos, 406 F. Supp. 2d at 329; United States v. Linval (RWS), No. 05-CR-345, 2005 WL 3215155, at *7 (S.D.N.Y Nov. 23, 2005).

With respect to the double counting of Escolastico-Pena's criminal conduct, this Court has applied the equivalent of a three-level adjustment in a number of recent cases involving double-counting.  See Ramirez, 2009 WL 4722237, at *6; Evangelista, 2008 WL 5057862, at *7; Santos-Nuez, 2006 WL 1409106 at *7; Austin, 2006 WL 305462, at *9; Santos, 406 F.Supp.2d at 329.

Accordingly, after accounting for the effects of the fast-track disparity and double-counting, Escolastico-Pena is more appropriately sentenced at the equivalent of an offense level of 14.  Under the Guidelines, an offense level of 14 and a Criminal History Category of III result in a range of 21 to 27

months.

In imposing the sentence, the Court considers the Defendant's criminal history, his motive for illegal re-entry, and the fact that he will face deportation proceedings following his release from custody.  Escolastico-Pena is hereby sentenced to a term of 21 months' imprisonment, followed by a three-year term of supervised release, should ICE not deport him immediately after he completes his term of imprisonment.

Escolastico-Pena is to report to the nearest United States Probation Office within 72 hours of release from custody. It is recommended that he be supervised by the district of his residence.

As mandatory conditions of his supervised release, Escolastico-Pena shall:  (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.

Pursuant to the Violent Crime Control and Law

18

Enforcement Act of 1994, for offenses committed after September 13, 1994, the Court shall require that all offenders on probation, parole, or supervised release submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the Court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. § 3563(a)(5) and § 3583(d).

Because Defendant's prior criminal history involved the possession of controlled substances, it appears that the imposition of the mandatory drug testing condition should be imposed as a precautionary measure.  This mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) will apply, along with the following special conditions:

> (1)   Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

19

(2)  Defendant shall participate in vocational and educational courses to better prepare him for future employment opportunities.

(3)  Defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer.  Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the Probation Officer, based on ability to pay or availability of third-party payment.

(4)  Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the Probation Officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in reasonable manner.  Failure to submit to a

20

search may be grounds for revocation.  Defendant

shall inform any other residents that the

premises may be subject to search pursuant to

this condition.

In consideration of all the factors set forth in 18

U.S.C. § 3572(a), it does not appear that Defendant is able to

pay a fine, and so the fine in this case shall be waived.  A

special assessment of $100, payable to the United States, is

mandatory and shall be due immediately.

The terms of this sentence are subject to modification

at the sentencing hearing scheduled for September 29, 2011.

It is so ordered.

New York, NY
September 26, 2011

_____
ROBERT W. SWEET
U.S.D.J.

21